Our next appeal is docket number 23-2410, Causam Enterprises, Inc. v. Unified Patents, LLC. Mr. Helge? Helge, Your Honor. Helge. Yes, sir. Okay. Thank you. Thank you. Please begin. Thank you, Your Honor. May I please reserve three minutes for rebuttal, Your Honor. Okay. May it please the Court, Your Honor, as the final written decision from the PTAB on the 592 patent incorrectly construed the term of what we call Element 1.4 such that it eliminated the requirement for confirmation, confirmation of a value by measurement and verification. Before I get into the claim construction problem here, I wonder if Your Honors would like to speak about standing because the 592 patent is sort of unfortunately sandwiched between two cases dealing with the 268 patent, which has this ITC cloud lingering over it. Are you saying this patent is also implicated? Well, Your Honor, the 592 was dropped from the ITC case, as I understand it, prior to the ALJ reaching a decision on ownership. Whether it is also part of that agreement, to be honest with you, Your Honor, we don't have a record in this case. Unified has never raised an ownership issue. We've maintained that we do own it. Unlike the 268 patent case, which we're going to hear next, the 592 has been a little bit of an odd duck here. We would submit that Article 3 standing is satisfied. Has the ownership of the 592 patent been challenged at all? No, Your Honor. Okay. No. Not in this proceeding nor in the ITC, and you don't know whether it's part of an agreement or not. I would agree with the latter part, Your Honor. So there was a challenge to ownership of the cause of patents. It was during the time that the 592 was involved with the ITC, but it was dropped from that ITC. So I would be pressed to say, is the 592 part of that same agreement? I would think it probably would be, to be honest. Can I just—so the way that I guess I've been thinking about this in all three cases is to go back to what we have said in Figenics following five other circuits. We're basically making a kind of summary judgment type of standard, something like, you know, substantial probability or something. What we have is an assertion by the, I guess, the petitioner that in this case, as in fact in the next case, that Possum is the patent owner, I guess, on the records of the PTO as the assignee, and no contrary evidence. So that easily meets the summary judgment standard for Article 3C in the absence of anything else. It's done. Isn't that right? So, Your Honor, I think for the 592 patent, I think you're 100 percent right. And, Judge Stoll, as you said before about continuations in part, we would agree that, once again, we do have a continuation in part in the 592 patent relative to the earlier filings. Judge Toronto, I want to hesitate. I don't want to get into the argument in the next case. We're going to get to that in the next case about whether that is, in fact, sufficient. But if the standard is the summary judgment standard, that is enough to avoid summary judgment against you, the fact that you're named in the PTO records as the assignee, you, in both cases, actually, you assert that you are, in fact, the patent owner. And there's no contrary evidence in these cases. How could that not pass the summary judgment test? I would agree with you, Your Honor. I would agree with you, Your Honor, especially with the 502. Absolutely. Your Honor, if I may, I'll move on to the claim construction issue. As I mentioned a few moments ago, the board interpreted Element 1.4, which requires a power-consuming device to both have an actual value of power reduced that is based on revenue-grade metrology and that is confirmed by measurement and verification. Now, the board, in effect, looked for no confirmation of values. They did look for confirmation of instructions, confirmation that instructions had been sent to devices. Presumably, the devices had reacted to those instructions, but there is not a confirmation of a value. Now, we can go back to the petition, pages 118 and 120 of the appendix, and that's dealing with the Ehlers reference on 1.4. In there, UNIFI focused heavily on Figure 1c of Ehlers, which takes all of its measurements and values at demand response event prior to the event occurring. And then they also looked at some of the other language about the fact that there is a measurement and verification process disclosed. Can I just ask you some questions about this limitation, just based on your disclosure in your patent specification? The patent specification, it is GPS. How does it teach this limitation? So, Your Honor, verbatim, Column 9 does talk about the power supply value, as Judge Chen illuminated before. In Column 9, and this is beginning around line 27, there is a statement, thus the PSV, which is the power supply value, provides an actual value that is confirmed by measurement and or verification. Thereby providing for a curtailment value as a requirement for providing supply to the power grid. Is it like the meter information? Is that with the value of the power reduced confirmed by what? So, the measurement and verification, Your Honor, this is a process. I'm trying to understand. I read that language that you're talking about. I want you to talk to me plainly about what it means. Absolutely. So, Your Honor, in the energy industry, there's this idea, do we want to build more plants or do we want to make use of available supply from other plants? Well, what I'm trying to say is, it says the value of power reduced based on revenue grade metrology. What refers to that in what you just referred to in the spec? What corresponds to it? And then it says, and confirmed by measurement and verification, what in the specification that you just read to me corresponds to that? So, Your Honor, the first part, the revenue grade metrology, I mean, there was a dispute about that in the IPR as well. Metrology is a science, and revenue grade is something that usually is referring to a meter. But the idea is, from our perspective, revenue grade metrology, it isn't here in this column nine. And we really have to tie it in, I think, from the bottom of column 19 where we start to get into the types of data that the utilities and these systems are gathering in order to value and to predict. Metrology is not used in this spec. Is that right? You're right, Your Honor, except for the claim. That's 100 percent correct. Okay. So the way, and Your Honor, I apologize, I want to make sure I answer your question. I think what we really have to do is take the metrology from the bottom of column 19 and the confirmed by measurement verification in column nine. And I think those concepts are combined in element 1.4 to really create a cohesive idea. Now, if we get into figure 12, we do have the predicted curves, right? And I think the prediction is really this idea of revenue grade metrology. We're going to compute what we think we can get. Can you just get away from the claim language and just translate it in plain English? I hope so, Your Honor. Without using these words from the claim, what do you think it's actually requiring? Your Honor, what I think it's requiring is a prediction of how much you're going to save. Send the data that you actually collect probably during the event, maybe before, but you're going to collect that data. Send it to an algorithm. Maybe it's a server. Maybe it's a meter. I think there is some disclosure in 592 that a meter can run this calculation. Say, did you get what you expected? I'm sorry, what data? I'm sorry, Your Honor. So there's data that's being disclosed, especially in column 19. Be concrete, please. Certainly. So I think we can talk about timestamps. I think it's block 816 of figure 7, timestamp data during this period. I guess I think I, like my colleagues, am just trying to understand this in very simple, concrete terms. You can't ever, in some sense, measure an actual savings because any kind of notion of actual savings is a comparison to a counterfactual, something that did not happen. Correct. So you need to have some figures taken from somewhere, presumably historical experience or something, about what you would expect to happen if you don't do something. And then compare that to what has actually happened after you did something, like turn the device off. So translate that very simple picture into what you think the claim requires. But you have to, when you turn the device off, you have to, what, measure that? It's not drawing any power? Why would you have to measure that? I mean, if you've actually turned it off, you know it's not drawing power. And then you need some historical or other information about what it would have drawn had it not been turned off. Judge Rontal, you're 100% correct. So duty cycle, for example, if you were to say that an air conditioner from 6 to 7 p.m. runs 50% of the time and you turn it off for the entire hour, you're not saving a full hour of use. You're saving 50%, half of the time, right? So the duty cycle, for example, for that system, given the ambient temperatures, the thermostat setting, right, there are a lot of things that, as Your Honor correctly said, you're trying to compare against a counterfactual. There's a lot of data that can say, well, how much would that AC unit have really been running in that hour that you said it's going to stay off? And so all of that data, I believe, can go into this algorithm. It can go into this computation of what would we have saved. And it's important because, again, as we're talking about, you know, energy companies, utilities, do we want to buy a new plant? Do we want to build a new plant? Do we want to say the plant next door and the next county over has 100 megawatt hours available from 6 to 7 p.m.? So sticking with that very simple-minded picture of what's going on, what do you think the claim requires when it says confirmed values using measurement and verification? So in that part, Your Honor, the confirmation, which is what we're focusing on for the claim term, we think that there is a prediction going on. That's the revenue-grade metrology. And the confirmed by measurement verification is saying, let's take all the data that actually occurred. Maybe we thought it was going to be a very hot day. It was a cold day instead. You crunch the numbers at the server, at the algorithm. Again, there is a disclosure of a meter being able to crunch this data. And you say, does A match B? Now, this came up during deposition of Unified's expert, actually upon questioning from Unified's own counsel. And he said confirmation is about finding out whether you got what you asked for. And we 100% agree with that. It's about finding out whether you got what you asked for. Now, doesn't Ehlers do the measurement after the control event and determine the amount of power that was actually consumed? And then also had already done measurements before the control event and then looks at the difference between the two. So, Your Honor, I think what you're referring to, which is this whole house meter theory. Yes, but it's also the HVAC example that the board recounted as part of the petitioner's argument that the board then said it agreed with. So, again, if we go back to the petition, this is not something that was developed in the petition. This was something the HVAC argument, as developed more, was really, I think, later on, maybe in the reply. In the petition, they were focusing on Ehlers' figure 1C, which purely takes the measurement before the event. It doesn't do any comparison. There is a disclosure, again, and I think it's paragraph or page 119, 120 of the appendix, where they do look at the phrase. Again, I concede Ehlers does say measured and verified, but Ehlers doesn't talk about comparing that figure 1C pre-event measurement with what you get afterwards. There's no comparison. There's no confirmation that you got what you asked for. But the board obviously read it differently, figure 1C. It talked about, you know, you have to calculate an actual power savings at the end of figure 1C, right, in order to give the customer his or her rebate. Well, they do say actual, and Ehlers is actual. And we said in figure 1C, Ehlers is actual, but it's talking about a pre-event measurement. And even, you know, there's a passage in Ehlers that talks about actual parentheses measured and verified, closed parentheses. Right. I guess it feels like Ehlers is echoing what's going on in this claim in terms of measured and verified and doing measurements both before and after. So I would disagree, at least in the parts that the petitioner brought to the board, Your Honor. But I think when we get into this whole house meter theory, which the board came up with on their own, this is not something that Unified had presented. They were leaning into the load control node 1.10C, which is a device-specific node. They said, let's make that a revenue-grade meter. And the board came in and said, actually, you know what, paragraph 136, here's a whole house meter. You can take a measurement of the whole house before the event. You can take a measurement of the whole house after event and compute the savings. But even that is not confirming. I mean, Ehlers never ties those paragraph 136 to 142 examples, right, which sort of runs you through a demand response event. Never ties that into this pre- So just to create a hypothetical, what extra sentence would Ehlers need to say in your view that would match what you believe confirming requires in the claim? I think it's something as simple, Your Honor, as you have to make sure you got what you asked for. Predictions are not enough. That doesn't help me. I need a little bit more. I've already gone through what I think is relevant content in Ehlers that matches up with the claim. You don't think it's enough. You think Ehlers needed to say something more on top of what it already says. What is that sentence that would, in your view, finally satisfy the confirming aspect? It's really a big picture concept, Your Honor. It already talks about measurement and verification. It already talks about doing measurements both before and after and taking account of the difference between the two. I realize you're talking, you're thinking it was impermissible to talk about the whole house example, but it also did that same difference analysis with respect to the HVAC example, which was something the petitioner raised. So what I'm telling you right now is it feels like there's substantial evidence here. What more, in your view, did Ehlers need to say than what it already said? Because I don't understand what the gap is in your mind that needed to be filled by Ehlers that was not filled. Your Honor, it's tying what you asked for and what you got. From 1.4, I think those two have to be looked at together. Did you get what you asked for? Because you can predict what the value of this was, and you can compute it afterwards, but those are two pieces of the puzzle. And what I think the 592 brings to the table is not only are we going to predict, but we're going to compute afterwards, and we're going to put it together. Now we've got a better data picture, and now we can refine maybe even better. So I know I'm way out of time. Thank you. Your Honor, we'll give you a little bit of rebuttal. Thank you, Your Honor. And Ms. Vu? Good morning. May it please the Court, I'm Laura Vu on behalf of Unified Patents. Before I turn to claim construction, I'd like to reframe the issue in this case. The Board found that the prior art teaches— Would you mind speaking up just a little bit? Yes, Your Honor. The Board found that the prior art teaches an actual value of power reduced that is confirmed by measurement and verification in both the Ehlers and the Chen grounds. And that finding is supported by substantial evidence. Now, COSM argues that there is an implicit claim construction issue in this case, but there's not under ecofactor, which affects the standard of review. And even if there's a claim construction issue, their construction is wrong. So starting with the— Okay, maybe it would help if I would put this claim into context with the Board's construction. So the entire limitation says you have an actual value of power reduced that is based on revenue-grade metrology and confirmed by measurement and verification. The Board construed the term based on revenue-grade metrology, and that construction did not require measurement. It just required using a meter with sufficient accuracy for billing. And COSM does not challenge that aspect of the Board's construction. So the only issue in this case is the construction of confirmed by measurement and verification and what that term means. The Board's decision did not implicitly construe that term because the Board was simply applying the claims to the prior art. Ecofactor tells us the test for implicit claim construction. And that test says to look at the Board's analysis and determine whether the Board's analysis is determining the scope or boundaries of the claim or if it's simply applying the claims to the prior art. And that's what the Board did here. It looked at the claim language confirmed by measurement and verification. It looked at two similar language in Ehlers, right, the actual measurement and verified contribution, and it found that the Ehlers reference teaches that limitation. Turning to their implicit... What does the Board point to for teaching revenue-grade metrology, you know, value of power reduced based on revenue-grade metrology? So, again, that term means using a meter. Yes. What in the Ehlers reference, for example? The Board relied on, I believe it was, sorry, the load control device unit 1.10C. It relied on that for using a meter. It also relied on the Rose reference, which teaches a revenue-grade meter. So those references are the meter on the... And then provided confirmation by other information. For that limitation, the Board relied on Ehlers teaching of an actual measured and verified contribution of the power savings. And, sorry, it also relied on the actual value of power reduced that was determined by measurement. And those are at the Board's opinion at Appendix 21 through 24 and Appendix 27. So would you say that just getting the measurement from the meter is enough to satisfy this limitation? Or does something more need to be done? Yes, the confirmed by measurement and verification limitation, you only need to get the measurement and calculate the actual value of power reduced. There's no requirement in the claim for determining an initial value or a predicted value. And there's no requirement of comparing. That language isn't in the claims. And, Judge Stroll, as you observed, there's nothing in the specification that would support that construction. What about at 827, where the Board says, towards the top, starting at line 3, we need not determine how measurement relates to metrology to the extent that metrology is limited to estimates and projections based on information stored in a database. Elders discloses such features, paragraph 113. Are you looking at 827? Yes. I'm trying to understand how this observation or this finding fits in with the Board's other findings. Is this an alternative finding? To be honest, Your Honor, I'm not sure exactly what this statement says. I think it just means that metrology is not limited to determining measurements. COSM, I think, was trying to constrain their characterization of Unified's claim construction arguments as being only related to measurements. But Unified's claim construction arguments were broader, and their position was that revenue-grade metrology includes using meters to take those measurements. So it's not doing the measurement itself. What I'm trying to understand is, if I understand COSM's argument correctly, they believe this claim limitation requires some usage of stored historical data about power consumption of particular device or devices, and then use that in comparison with what actually got consumed by a device during a control event. And so, therefore, the Board is trying to address that part. If historical usage data is required, then Elders has that too. I think COSM has suggested that Elders does disclose some historical data, right? Just the measurement taken before the power is shut off and before the calculation of the actual value, the actual savings. So in that sense, maybe Elders discloses this historical data and calculating some power savings based at least in part on some historical data. But Elders also discloses taking measurements after the power savings event and determining additional calculations to determine the power savings as well. And so that would satisfy the confirmation by measurement and verification aspect of the limitation. Does Unified Patents agree that COSM owns this patent? That issue was not briefed, and Unified—and there's nothing in the record about ownership, but we agree that it is their burden to establish standing. I just want to briefly address the extrinsic evidence that they rely on. It's the testimony of Unified's expert that evidence does not support their construction because it doesn't relate to the confirmed by measurement and verification limitation. It relates to the revenue grade metrology limitation, which was at issue before the Board. And just to briefly touch on the whole-house meter theory, the Court can affirm the Board's decision even without relying on the whole-house meter discussion. Judge Chen, as you mentioned, the Board seemed to—or the Board did agree with Unified's analysis and arguments, and that is at Appendix 21 through 27. The Board also made an additional finding regarding measurement and verification at Appendix 27. If the Court has no further questions, Unified respectfully asks the Court to affirm the Board's decision. I'm just curious. In the next IPR appeal we're about to hear, the record includes a document called AEIC document. Is that document part of this record? Not that I'm aware of. Okay. All right. Okay. Thank you. Okay. Give Mr. Helge two minutes, please. Thank you for entertaining a brief rebuttal, Your Honor. Your Honor, I think Appendix page 27 is a great example of where the Board really didn't know what to do with the metrology term. But I'm going to go back three more pages to page 24, Appendix 24. And this is where Unified tells the Board in its reply what confirmation means. And unfortunately, they don't really do anything. They punt. So this is the very first sentence that the Board relies on from the reply, page 7. And it reads, Petitioner points out that limitation 1.4 does not require the actual value of power reduced to be measured and instead only requires that the actual value be confirmed by measurement. That's from the reply, page 7, which is Appendix page 439. And that's exactly what Petitioner said, is you confirm by measurement. But that's how you determine. So what they've done is they've blurred this concept of confirm by measurement verification with the initial concept of determining what the power savings is in the first place. We see this in Appendix page 157 and 158 in their petition where they talk about the Chen reference, where they say that there's a control that goes to a power-consuming device that leads to an actual value of power reduced. So even in the Chen reference, there's no concept of this prediction and then measuring the actual and matching them up. That's what's missing from the petition. What they've done, when we think about Judge Chen, as you talk about Appendix page 27, the board doesn't need to determine how measurement relates to metrology, so they rely purely on, as they say here, estimates and projections based on information in a database for revenue-grade metrology. The problem is what that means is that there's only one measurement that the board is looking to, to satisfy both the actual value and a confirmation of the actual value. And we think that's simply inconsistent with the plain meaning of the term confirmed, which is saying— Just to clarify, your view is because the claim says it has an actual value, that must mean the claim requires determining it, right? Yes, Your Honor. Okay. Correct. Correct. We think that the abstract idea of just turning off the light and knowing you're using less energy is not what we're talking about here. We're saying the actual value is based on revenue-grade metrology, and that's the prediction. What about the point that some of this language was, in this first phrase, has an actual value of power reduced based on revenue-grade metrology, was defined, right, and did not require an actual measurement, and you didn't dispute that? That's what I think I heard. Well, I think, to be clear, Your Honor, what our position was below was that metrology was, in effect, the predictive science of this all. But you needed to have a value, and I think that goes back to Figure 12 of the 592 patent where you have these charts. We're going to predict. We're going to have a graph that predicts where we're supposed to be and a graph that predicts where we actually are, and the comparison of that is important. So I think my time is up, Your Honor, but thank you very much. Thank you very much. The case is submitted.